The next argument is in Appeal 1093 Cornish v. Doll. Mr. Cornish, good morning to you. Good morning, Mr. Roberts. Welcome to the court. You're the client and the lawyer in this case. Yes, sir. Let me just ask you this question at the outset. It seems that you sought to enjoin the Patent and Trademark Office from requiring you to retake the exam, right? No, sir. I allege that that is wrong and incorrect.  I don't believe I did, sir. I asked for the Patent and Trademark Office to reply to my suit for Bivens damages for constitutional violations. Well, as I understand it, Judge Roberts understood you to be asking for an injunction directed against the Patent and Trademark Office, and he denied the injunction. You then appealed here. So it seems like you're saying the injunction should have been granted and the Court of Appeals, this panel, should therefore reverse the denial of the injunction. I see what the question is. I would prefer to look at the question slightly differently, because the District Court denied the motion to dismiss. And that is the basis in a large measure for my appeal to the Court of Appeals for the District of Columbia, who in turn also said that the motion to deny would be not granted. And they, the Court of Appeals, sent the case to this Court. Isn't your complaint that you don't want to have to take the patent exam again? No, sir. If that were my concern... What do you want from this Court? Well, I have the list here. Just give us... I will. Yes, sir. With your permission. Two principal items. I'm sorry. Two most important things you want from us. Really, the essence of this case is Bivens damages. How have they damaged you? Well, seriously, they have... How did they damage you in a way that should give you money? Okay. Now, I amended the complaint, and that's where this case really started to roll. And the case that was amended particularly pointed out that I was opposing the final rules that were opposed in Tafas et al. And, as you know very well, that case went for the plaintiffs. But your damages, if there were any, are because you can't practice patent law. And the patent office has denied your ability to practice patent law before the patent office because you withdrew from practice because of an ethics complaint in Maryland. No. And they required you to take the examination, to be reinstated, and you failed three times. So how else do you have damages? Not relevant at all, Your Honor. I beg to differ only with the facts that's alleged by the patent and by the defendants. So how have you been damaged? This has nothing to do with Tafas. Well, if you would allow me to just mention the final rules, which is my concern. Well, they're not the concern of the court in this case. We have that case before us in another sense. We're interested in you and what reason you think you have for damages. And you have no stake whatsoever in the Tafas case. So please tell us about something that's relevant to this matter. All right. The reason why I was interested in Tafas is because it's... I just said you have no interest in Tafas. Tell us about this case. Well, this is a First Amendment case in which the patent office has prohibited me from appearing and appearing as an attorney, an agent, or a firm. You can't be an agent. You removed yourself from the agent's roles in 1995. But that, Your Honor, is very, very much in dispute. Now we're getting to the matter before us, finally. Okay. But the point is you removed yourself in 1995, right? No, that is not correct. And I did not intend to. And my letter, which is the letter of February 8th, which is in the record, simply said that my name was changed. And my address is 1101 New Hampshire Avenue Northwest. I'm required by the patent office to tell them what my address is and my name. Now, they said in response to my letter that we will remove your abandoned name, which was the name I had changed. My name was Cornell D. Cornish. I went to the court in the... Yes, I know. You're now Judge Cornish. But the question that occurs to me is why does changing a name change your status in any way sense as capable to practice before the patent office? Right. But your question was slightly different. The question that I have is why they didn't change my name instead of taking the position that that was a removal of me from the bar. There's no reason why... I was under, as you may know, and you said... Well, now we come to 2005. They tell you if you're to be readmitted, you must take the bar. And you agree with that because you take it three times. No, sir, I don't. Well, why did you take the test three times? Simply because of CLE. I'm required in New York State to show that I am actively seeking to keep my status up to date. You're educated by taking the test. Is that it? Yes, indeed. Absolutely. So I'm like Mark Phelps who lost the race after winning five gold medals. Just because I simply didn't get a passing grade on the exam doesn't mean that I'm not qualified or competent or in any other way able to file my cases pro se. Well, isn't it the case that the patent office offered you two alternatives? Either take and pass the patent exam or show us what studies you have completed that would be the equivalent in showing that you're current and comprehensive on patent practice. Yes, I understand. Is that correct? They gave you those two choices? No, sir. They gave me the choice only. They required me to take the exam and I took it under protest because my allegation, my injunction is against them for requiring me to take the exam. I'm not required by any rule or any statute to take the exam. I can take it voluntarily. Wonderful, I did, simply because I want to keep myself up to date. But they can't make me take that exam. Well, the regulation says that when someone has been suspended from practice, in order to be reinstated to practice in the patent office, the individual has to retake the patent exam. Exactly, Your Honor. I was never suspended. Particularly difficult to find any evidence that I was suspended. And that's a serious damage claim. When they did not take me away, they did not defrock me. They're using the case of Benninghoff, a California case, which says it would be inevitable that you would have been disbarred. So therefore, we can summarily, without a trial, without a hearing, disbar you because you are a lawyer. As I understand it, they sent you a letter saying, we're going to treat your application as a request to be taken off the rules. And if you disagree with that interpretation, you have 30 days to tell us and that you never responded. Not even close. Excuse me, but I don't think that's even close. I wrote them and told them that my name was changed and they wrote back to me saying that we're going to hold the whole matter in abeyance. They didn't ask me for any information. It was not an RFI requesting me to tell them why they shouldn't take me out of the bar. It was simply they had put the whole matter in abeyance. I quote their letter. This is not a case of disbarring me or defrocking me or suspending me or in any way, there's no discipline here. I didn't do anything wrong. Why would they disbar me? Why would they suspend me? They never said I did anything wrong. And why did you ask to be withdrawn from the rules? But I did not, sir. I did not. I asked for, I made an information statement that my name was changed. And could you please tell me if there's anything I can do to help you? So it was my RFI, not theirs. I was simply saying I changed my name. I changed my address. I didn't change my address. All right. Would you like to retain your rebuttal time? Yes. Thank you. Thank you. We'll hear from the government. Mr. Johnson. May it please the Court. The District Court did not abuse its discretion in denying Mr. Cornish's motion for injunctive relief. He says he wasn't asking for an injunction. Well, Mr. Cornish has filed a number of motions at the District Court. Most of them are largely confusing. How many motions? I believe it's upwards of 13, Your Honor. After the USPTO filed its dispositive motion, Mr. Cornish filed nine motions that lacked merit, and they were difficult to understand. What is the lack of merit or the difficulty in understanding having to do with whether the motion for an injunction was rightly or wrongly denied by Judge Roberts? Well, with respect to the March 3rd minute order, Judge Roberts stated in his February 25th order that Mr. Cornish had filed a number of motions that lacked merit. So he warned Mr. Cornish that any future motions filed before the USPTO's dispositive motion was decided may be denied without prejudice. But that relates to future motions. He says he asked for damages. Well, Your Honor, Mr. Cornish has another complaint against the agency, and in that particular case, he has argued for damages. So I believe that Mr. Cornish is somewhat confused as to what he's appealed here and what is going on in this other matter that he has. A totally separate case, you say? Yes, Your Honor. Did the District Court here deny damages or grant an injunction? The District Court denied Mr. Cornish's request for injunctive relief. That was the March 3rd minute order. Mr. Cornish, three weeks after the District Court issued a warning, then filed a motion to reconsider the March 3rd minute order that the District Court issued. And the District Court denied that particular request on March 24th. And that's all that's before us? Those two orders denying the same motion asking for injunctive relief? That's completely correct, Your Honor. The motion that was filed that led to the March 3rd minute order is virtually identical to the motion for PI that Mr. Cornish filed. I'm looking back at the documents from 1996, and Cornell DM Judge Cornish writes to the Commissioner and says that you have incorrectly issued an order under a name he's abandoned, but he is ceasing his practice before the Patent Office until you dissolve or amend the incorrect order. I presume he's talking about changing his removal to the correct name. Is that what his protest is? Your Honor, it's difficult to make heads or tails of that particular letter. However, when he stated that he was ceasing to practice… I'm trying to figure out if you made a correct statement just to write back to him and say we're not going to investigate you any further, but we're removing you from the roles. Yes, Your Honor. It's the agency's belief that it did make a correct statement because it indicated to Mr. Cornish that we were interpreting his communication to us as his request to have his name removed from the register. But, if we were incorrect, to let us know within 30 days, because part of what we're going to do is also defer from continuing to investigate allegations against him. The office did not hear back from him, so six months later, his name was removed. Which name, by the way? Both? It was the one that we had on record at that particular time, which I believe is… That's correct, Your Honor. But ultimately, it's the two minute orders, Your Honor, that are currently before this court on appeal. Now, is there a Bivens claim in the other case you referred to? In other cases, is that the case that contains the Bivens claim? Yes, it is, Your Honor. And there's no Bivens claim in this case? It's difficult to completely understand what exactly he has alleged in a number of his motions. I'm not quite clear as to whether or not it's here, but it's definitely addressed in the other case where he has argued that repeatedly before the agency. It would have to be in the complaint, right? That's correct, Your Honor. Have you read the complaint? Yes, Your Honor. Does it allege money damages for a constitutional violation under the authority of the Bivens case? Your Honor, I don't believe that it is there. He has raised money damages in other motions, but as far as the complaint is concerned, I don't believe that it's there. Mr. Johnson, the PTO suspended its investigation of Mr. Cornish, right? There was an investigation… That's correct, Your Honor. …that was headed towards removing all of his authority to act in any capacity, right? That's correct, Your Honor. Based on certain ethical charges. Could those be reassumed at any point? Could your office reinstitute those actions? Your Honor, I believe based upon a statute of limitations, the office is precluded from doing so at this point in time, so that's not a possibility. In order for the office to raise a complaint against a practitioner, it has to bring the charge within five years, and I believe the five-year period of time has already passed. Do we know, counsel, the current status in the three jurisdictions where there were investigations and possibly suspensions? I believe Mr. Cornish urges in his papers to our court that he was reinstated in all three of those jurisdictions. What is your understanding of his status with respect to being reinstated or not being reinstated in New York, Maryland, and the District of Columbia? I don't know whether or not the office has checked into that, but we're happy to take him at his word, and he can practice in trademark-related matters based upon his bar in any of those jurisdictions, if he is indeed barred there. But he's seeking to be able to practice on the patent side of the house. And that's where the problem lies, until he has shown to the satisfaction of the OED director that he has the legal qualifications to practice and is competent to do so, or passes the exam, then he will be unable to practice before the office. Did I correctly remember that he was sent a letter saying that, that he could either take and pass the exam or otherwise show that he was current in his knowledge of PTO patent practice? You are completely correct, Your Honor. He was sent a letter. And did he ever provide any documentation under the second alternative of otherwise showing competence? Initially he did. He submitted some information which the OED director thought was insufficient. This is when he said, I attended AIPLA meetings. And that's correct, and he also attended certain CLEs and did some other things. But there wasn't sufficient evidence there to show that he actually attended them. So he was offered the opportunity to supplement that sort of information. He was. But he never did it? That's correct. He decided to take the exam. And he took the exam on a number of occasions, but was unsuccessful in those attempts. Anything further? Nothing, Your Honor. Thank you. Mr. Cornish, you have some rebuttal time? All right, sir. It's difficult to argue against the fact that the Patent Office has actually not stated the case correctly. And that I have been in good standing in all the courts you mentioned, including this court, and they have cleared me by the letter mentioned. That is to say, you wrote to us and told us you changed your name. We can consider removing it from the record. Perfectly satisfactory thing to do. So I don't have to resign or I have to worry about being disbarred because there's no finding a probable cause to in any way disbar you. And the main purpose of this hearing, it is to me, is I don't want to be reinstated, and I never did. I want to practice pro se, and they are prohibiting me from practicing pro se. Pro se means arguing your own cases, not representing someone else. Exactly. I have a case. I'm an inventor, and the record's full of cases that I've worked on and have been an inventor of. Now, they have told me categorically they have no objection to me being, to be practicing pro se. As attorney in the Patent Office, including the Trademark Office, no objection for me to practice there. I'm in good standing everywhere, including the Patent Office. I'm not in bad standing in the Patent Office. They have never said that. But they have not allowed me to express my First Amendment right in my pro se case to call myself an attorney in good standing in New York, D.C., and Maryland. So the injunction is to prevent them from abusing my First Amendment rights. I have a right, as far as I know, to call myself a lawyer. Question, why did you change your name? Well, it's actually a First Amendment religious case, because I changed my name after heart surgery, and my heart stopped for one hour. And the only explanation I can find for my survival for quite a few years since is divine intervention. So I took my new names out of the Bible in thanks to God for whatever mercy he had given me. It's much, much more than I deserve. And my name was told, I told the Patent Office I changed it, and it was for religious reasons. It wasn't, as they point out, that I was resigning to avoid the embarrassment of disbarment. I don't care whether they disbar me. As a matter of fact, I have repeatedly asked for a hearing. I'm asking for one now, and I have never gotten it for 13 years. Every other jurisdiction that I'm in always says, show cause order, or let's have a hearing. Or after these matters are taken away, we'll reinstate you. This is really an administrative problem that they are having. This is not a legal problem, and that's up to them to figure out which name. They never said which name was removed. I still don't know which name was removed. I think we have your position and the Office's position. We'll take the appeal under advisement. Thank you, sir. I appreciate your help.